If it pleases the Court, Arvind Swaminathan on behalf of Defendant IXL. Your Honor, if it would be okay, I'd like to preserve three minutes' time permitting for my rebuttal. All right. There's two basic grounds here, Your Honor, to reverse. And there's two basic themes that are underlying this. The ultimate issue here is whether the plaintiffs agreed to the terms of service. There's two ways to get at that. The first is, did they actually agree to the terms of service? That's the easy decision here. That's the easy call to determine that the District Court erred because it shifted the burden incorrectly in evaluating whether or not it satisfied 1589. The second is on the agency issues and whether or not the schools can act or did act as an agent of the plaintiffs in agreeing to the terms of service. So, Counsel, let me interrupt you to ask a question that isn't addressed in any of the briefs and may be a non sequitur. And I would not be insulted at all if you told me that's a non sequitur, Judge. So here's my question. When I look at the arbitration provision, which I think is number 22, it says, read this section carefully because it requires the parties to arbitrate their disputes. And in the beginning of the terms of service, it says, the agreement applies to all visitors, users, and others who access or otherwise use the service, you or users. As far as I can tell, there's nothing that defines here who the parties are that are required to arbitrate their disputes and you is defined. So part one, who are the parties to this agreement? And part two, does that make a difference? Because it doesn't seem to me that even if you were hypothetically right on your other arguments, that accessing the service would transform someone into a party to the agreement. But go ahead. Well, I think that is part of the thrust of the question, Your Honor, which is who actually entered into the agreement, right? Who is a party to the agreement as opposed to who is you? Correct. Well, I think they ultimately end up being the same thing. And here's the reason why, just for context. This is a service that's provided over the Internet. So the user, whoever it might be, goes onto the Internet, logs into their IXL account, and they can access those services. So it is not as if their services are being passed through. The individual who's using it uses them online, right? So the students use them online. In fact, parents can be provisioned accounts to also go online and access and see what their students see. But your clients are the ones who drafted this, right? Correct. And it doesn't say you agree to arbitrate. It says the parties. Right. And what I would say, Your Honor, is in this situation, whether acting — whether the school is acting as an agent of the parent or the parents and the plaintiffs agreeing to them explicitly, they are both parties to the agreement. Regardless of which avenue you adopt, they're both parties to the agreement. They're parties to the agreement because if you go to the first issue in terms of whether or not they agreed to the agreement, 1589 is what controls. 1589 essentially says you have to have assent. You have to have voluntary assent, and that can be demonstrated by accepting the benefit. So when the plaintiffs and their students go in and log on, they accept a benefit. So the district court was right. 1589 applies, and we have assent. The only question then is whether that assent was voluntary or not. And what the — where the district court erred is it said that voluntariness showing hasn't been satisfied by IXL. It's not IXL's burden to show voluntariness. The case law in California is clear that the burden on showing voluntariness shifts to the plaintiff as being the — folks in the best position to make that decision. Let's assume hypothetically that we — that my first question we decided was irrelevant and we agreed with you on the burden of proof. Wouldn't we need to remand? So you can reverse your honor and compel arbitration if you conclude that the plaintiffs offered no evidence whatsoever. They don't. There's no evidence in their — in the pleadings below the district court as to whether or not their use or assent was anything but voluntary. Would that really be fair in the context here where if you're right that the district court got a legal issue incorrectly, there wasn't much discovery here? Would it be really fair for us to do that, even if we agreed with you, as opposed to sending it back and saying to the district court, allow discovery and make a factual finding? So your honor, I agree. I think it's — it is technically correct, right? The technically they didn't submit any evidence. It's their burden. That is — the law is clear on that point. So I think you technically can reverse and compel arbitration. I don't disagree with your honor. A fair thing to do is to order discovery. There's a whole host of issues that I think if the court vacated the order and remanded, there's a whole host of issues where discovery is appropriate, right? One is on this issue of voluntariness. There are two issues on the agency piece of the argument that are also where discovery is fair, right? Whether an agency relationship was actually formed between the school and the plaintiff, number one, and then whether it's necessary and proper, right? An extension of California law — Although, what is your — on that point, what is — what is the evidence that you offered beside this — the terms of service and the FTC issue that even if there was some sort of agency, that it was agency which had within its terms the ability to — or that they had the ability to sign these parents up for arbitration? I agree that's separate from voluntary use after knowledge of the terms, but I have a lot of trouble seeing how even if there were some sort of agency here, it could incorporate the requiring the users to arbitrate. So I think there's a couple things, Your Honor. The first thing is that our position is that the COPPA rule creates the agency relationship in and of itself, right? How can that be? I mean, how can guidance from the FTC that is, in my view, very general, which the FTC has disclaimed, but putting that aside, how can that kind of guidance create an agency under which the parents are bound to arbitrate? So I think there's a two-step process. The first step is, is there an agency relationship to begin with, right? And our view is, what COPPA says essentially is, look, there can be an agency relationship. And so we think that that's evidence that there was an agency relationship because in this instance, IXL followed the — how the FTC had laid out, that agency relationship might be created. So that's the first question. The second question, then, is how — what is the extent of that agency relationship? That's the question you're asking about arbitrability, right? And that is the second part. That is a question of whether it's necessary and proper, right? Well, but you're relying on what the FTC said. And, I mean, even if one could look at it as some sort of binding type of statement that could somehow bind these parents, which I think is a big leap, I just don't see anything in what you're relying on that has anything to do with binding parents to arbitrate, that the schools have the right to bind the parents to arbitrate. Well, so I think that's the entire point of whether and why discovery is necessary. But let me walk back into this. In the terms, Your Honor, if you look at ER 134 in the second paragraph, or the second section of when it talks about eligibility and authority, there's two different representations that the school is making. One, you represent and warrant that you have all necessary authority to request such actions from you or on behalf of the account holder, the school or a parent, number one. And number two, it also goes on to say, if you are a school providing service to children under 13, you represent and warrant that you have authority to provide consent on behalf of the parents for IXL to collect information. Right, but that language that you referenced, assume that that's enough for an agency relationship, setting aside COPPA guidance, that that's enough to create an agency relationship, right? Is that the only evidence in the record, is that the school basically made that representation when it agreed to the terms? So, again, I think, Your Honor, that's evidence that an agency relationship could have existed. And the first question that discovery should be allowed to proceed on at the district court is, was that actually an agency relationship? It might not be. But, but, but, counsel, here's where I have a problem, even if we have just looked at this language. If you're a school, et cetera, you represent and warrant that you have the authority to provide consent on behalf of parents for IXL to collect information. How could that possibly be read to provide authority to bind you to arbitration when you specifically mentioned that the authority provides consent to collect information? Why would anybody think that that language would also provide authority to bind you to arbitration? So I think you can go and look at the way the district court looked at it in the crypto asset fund case. In that case, it was about the buying and selling of crypto assets. But the arbitration provision was part of those terms. And in that case, the court said it's necessary and proper that those terms of arbitration would be normal to be attenuated to that purchase and sale. And so all I'm saying, Your Honor, is this. I don't think there's a case on point that says it is automatically necessary and proper. I totally agree with you. I mean, no, counsel, you know, I'll mispronounce the Latin here. But if one were going to be looking just at a basic principle of exclusio uneus, wouldn't the fact that you mention collect information be a reason to exclude the reading of you have the authority to collect information and bind the parents to arbitration? I don't think that's necessary. You're right, Your Honor. I think what California law says is anything that is attended to that is necessary and proper to effectuate the agency relationship is part of the scope of agency. And so the question is, is what's necessary and proper? And what we said here is that issue is something that discovery should be allowed into. I don't know what the answer is to that, Your Honor. The district court may determine it's not necessary and proper and agree with Your Honor on that point. The district court might say, oh, look, it is necessary and proper, and here's the evidence that was adduced. I'm going to conclude that it was part and parcel of it. But the district court hasn't made that finding yet. And so what I would suggest, you don't have to make a determination of law that the language in here automatically binds them to arbitration. That's not what we're asking the court to do. What we're asking the court to do is remand it so that we can go back and have discovery on that issue and determine whether it's necessary and proper. I would fully admit to you, Your Honor, it might not be. It very well might not be. But the problem here is that the parties haven't had a chance to explore that issue, identify evidence that supports or negates that condition of both parties, and then get that in front of the district court to allow Judge Lynn to make that decision. And that's what I would submit that the court should do here, is remand and say, and say essentially this. There is evidence in the record from which IXL could have concluded that an agency relationship might exist. We don't know whether there's one, I guess there's not enough evidence in the record to make that finding. So we're going to remand back to the district court to answer two questions with discovery. One, was there an agency relationship created? And two, what's the scope of that agency? If the scope of that agency, right, should be informed, and the existence of that agency should be informed by discovery. So all we're asking on that point, Your Honor, is to say that there's sufficient evidence in the record from which IXL could believe that an agency relationship existed between the school and the plaintiff. And if that's the case, then they have met we have met that burden. And as Your Honor explained in Kanapke, that's exactly the province for discovery, right? We've demonstrated that there's And counsel, I just want to make sure I understand your argument. The basis on which we can conclude that there's sufficient evidence in the record for IXL to believe that an agency relationship may exist comes from the school district's representation that it has the authority on behalf of the act, on behalf of the parents, in terms of the collection of information. It is that, Your Honor, plus in the statement of basis and purpose. Oh, yes. Setting that aside. Right. Well, but they dovetail, Your Honor, right? Because the FTC in the statement of basis of purpose indicates how an agency relationship might be formed. They say this could be it, right? And that's in the statement of basis of purpose. That's exactly what's in the terms. So they dovetail together. And so all I'm saying is that the terms which follow the FTC statement of basis of purpose are sufficient indication to IXL that an agency relationship could exist, right? And then the question is, what's the extent of that relationship? And in the discovery that you're expecting to see, you don't know. You're looking for some type of consent form signed by parents. Exactly, Your Honor. For example, and this is in the terms. In the terms, IXL encourages schools to let parents know that their students will be using IXL learning services. If that's the case, Your Honor, and that actually was there, then there could be more basis as to what the school did, what it told parents, what it agreed to parents, specific conversations. So at this point, you don't have any expectation of any type of discovery. You're just basically wanting to get to the next step to see what's there. That's exactly right, Your Honor. But I mean, I suppose that this cuts on multiple issues. You could have, but you didn't request discovery, right? We did request discovery, Your Honor. In what? Other than during oral argument, did you ever request discovery? In the reply brief, Your Honor, and I think it's that page, it's at ER 75, we note specifically that, and this was Your Honor's opinion in Kanapke, right, that discovery is appropriate here, that there are issues of fact here that should be resolved by discovery. But you could have, prior to that, filed a request for production of documents, interrogatories or admissions, right? Was that somehow prohibited? No, it was not prohibited, Your Honor. But again, under Your Honor's opinion in Kanapke, nothing required in that case, the people connected with the defendant to seek discovery first, and the district court never found nor could it have that it was way of taking a discovery. We're on all fours with that issue here, right? Where the issues arose where discovery would be, we've looked at those. And what the district court essentially said is those are issues that are not, there's not enough facts to make those determinations on. So we're in the same posture as Kanapke, where we filed a motion to compel arbitration. It was denied. And as the Court said in that case, a motion to compel arbitration is akin to a motion to dismiss, followed by optional discovery before summary judgment if the motion is denied. So let me make sure I understand. Procedurally, they filed a complaint, and then you filed a motion to compel. Right, Your Honor. And then in the reply brief, there was a suggestion of discovery. Had the Court set any type of scheduling order at that point? No. Not on discovery, Your Honor. But I want to just pivot you back, Your Honor, to the very basic premise that, like, there's an easy way to do that. Those issues are complicated, and I understand how they can be complicated and a little tough to wrap your head around. The easy question here is this. The plaintiffs incorporated the terms of service themselves into their complaint. You might ask yourself why, and I will tell you exactly why. Because the plaintiffs, all Kansas residents, are bringing claims under California law. They didn't incorporate the terms because they thought it was fun. They incorporated the terms because they are relying on the choice of law provision to bring claims under California law which have statutory damages. That's the purpose. It wasn't accidental. It was intentional. And it's very clear from the complaint that the terms of service are part of the basis for why California law even applies to this case at all. And so this was a situation where they incorporated the terms of service. They knew they existed. And so the only question, then, under 1589 is whether or not it was voluntary. And there's where the district court made an error. The district court flipped it. They flipped the burden and put it on IXL to come forward with evidence that it's a voluntariness. That was the wrong standard. And so what I'd submit to you, Your Honors, is the easy way to determine this case is to say, yes, under 1589, they were — they knew or should have known of the terms of service. They assented by demonstration of conduct. They accepted a benefit. None of those are in dispute. The only dispute is as to voluntariness. And so, Judge Bennett, as you suggested, an entirely fair result would be to send this back to the district court on that issue and vacate the opinion and say, we're going to remand with instructions of the district court to entertain discovery on the issue of voluntariness. Am I correct that on the voluntariness issue, there is no definitive statement by the California Supreme Court, and neither party in their briefing has asked for certification? Correct, Your Honor. All right. Thank you. Yes, Your Honor. All right. I know you wanted to save a little bit of time. Good morning, Your Honors. May it please the Court, I'm Julie Liddell here on behalf of the plaintiffs. Before I address the arguments raised both today and in the briefing, I'd like to address a — briefly, two preliminary issues that are dispositive of this appeal. First, there is no evidence in the record of the terms of service that my clients purportedly saw. ISL produced only a copy of its 2018 terms of service, but it admits that those were not the terms in effect at the time my clients filed their complaint. We, therefore, have no evidence of what those terms were. And as Judge Bennett has pointed out, the law is well established in California and in this Court that courts must interpret the meaning of arbitration clauses in connection with the rest of the agreement and not detached portions thereof. Here, there's no agreement to interpret because IXL failed to produce it. Second, even assuming, as I think we have, that the 2018 terms are sufficient evidence of the terms that my clients purportedly saw, when read as a whole, as they must be, it's clear that they do not contemplate a contract between IXL and parents of students who use IXL for school. Instead, for school accounts, the terms plainly state that IXL's contract is with schools, not parents. So, in other words, IXL did not even offer terms that my clients could have theoretically accepted under 1589 or otherwise. And these two issues alone obviate the need for additional analysis. Where does the word of the terms of service clearly spell out who the parties are? Sure, Your Honor. So you made the point of making this distinction between you and the parties. And I think the answer is that actually they can be the same. But the key point is that who that person is is determined at the time that the account is created, not at some later time. And if you look at the, it's the appellate record, terms of service, at page 135, section 4, IXL lays out the different types of accounts that they offer. One is a family account that is opened by parents for use by their children. The other, and they break them out into two different types, classroom and site, those are both school accounts that are opened by teachers, principals, school personnel for use by students. And the agreement makes very clear that they contain two separate non-overlapping sets of terms, one that governs school accounts and one that governs family accounts. Nothing in these terms contemplate some sort of conversion from a contract with schools of students using school accounts to a contract with parents just because they happen to see the terms of service. That is an unworkable interpretation of their own terms of service. So why would it, let's assume hypothetically, assume hypothetically that on involuntariness you had the burden of proof and the district court was wrong, just hypothetically. And assume hypothetically that there is evidence that the plaintiffs used the services after they had received the terms of service. Why would it be at that point in some way improper to find that the parents are bound by the arbitration provision if you have the burden of showing involuntariness and you can't show it? Sure. So I would start, just in answer to your question, I think 1589, again, reading as we must, the statute as it's written, giving effect to every word, the second word in this 37-word statute is voluntary. And it is a basic canon of construction that's codified in California law and has been observed many times by this Court that we have to give effect to those words. And so there is no, nothing in the statute, no canon of construction, no case law that would suggest that you can just ignore that word. And essentially what they ask you to do is ignore that word and instead conflate it with statutory defenses to contractual enforcement that are set out in other places in the California Code. But there — and the cases that they cite, in fact, all deal with those other types of statutory defenses under — as enumerated in 1567, whether it's duress, mistake, fraud, rescission, those cases all — there was no dispute that a contract existed. The question was, was there a statutory defense that precluded enforcement of which the party resisting the contract bore the burden of proof? But doesn't that part of your argument go to they had the burden? Right. Okay. So but my hypothetical, which may not be in any way the direction the panel's going on, is — Assuming we have the burden. Assume you have the burden, why shouldn't we send it back for discovery? So there are — and earlier this Court was talking about things in terms of waterfalls, and I actually think that's kind of a helpful metaphor here, which is before we can even decide the issue of voluntariness in terms that would render it dispositive of this appeal, there are several other grounds on which the District Court could affirm this — this Court could affirm the District Court's order. Number one is the fact that, as I've said, there's no evidence of the terms that my clients actually saw. Number two, we have the fact that the — assuming that the 2018 terms of service were an accurate depiction of whatever terms of service my clients saw, that they do not contemplate a contract with parents such that it would be impossible for any parent to unilaterally impose upon IXL a contract with IXL just because their child used a school account for school. Number three is that, even assuming that the 2018's — 2018 terms govern the terms govern, we have no evidence on the record of actual or constructive notice. The argument that they make is essentially one of constructive notice, that plaintiffs are held to know, it's imputed knowledge, all of the allegations in the complaint. I think we're aware of the different levels. Right, right. Now, getting to the level of voluntariness — So getting down — right, that's right. There is a suggestion of a remand if we need to get to that level for discovery, either on the voluntariness question, or counsel suggested maybe even on the agency relationship question. So what do you think of the suggestion to remand for discovery? Remand is not permitted in this case. Remand, especially for purposes of reopening the evidence, are highly disfavored. And it's only permitted under, I think as the case law says, extraordinary circumstances that are not presented in this case. Here, what we have is a — IXL's wholly — their fatal failure to produce evidence that they were provided, they were required to produce in support of their motion. IXL did not even adduce evidence that was in its possession, the contracts, their own terms of service, that either the school or my clients purportedly saw, or in the customer's possession. They produced no evidence from the school that might show that the school could — was authorized to serve as my client's agent. Nor did it even seek discovery on the elements of 1589 or on the existence of an agency relationship itself. They only requested discovery on the scope of an agency relationship that the district court found did not exist. And so it was their choice to rely only on the 2018 terms of service and to adduce no evidence, as was their burden, to prove a contract under 1589 besides simply relying on the — on the complaint. And under — I mean, as I believe Judge Wynn said, there is certainly no remand that is permitted to allow IXL to produce not any specific evidence that they have provided or evidence that's newly available, but rather just to see what's there. The law does not permit reopening of evidence after a total failure of proof without even a baseline level of diligence exercised to permit a phishing expedition to see if possibly there is evidence that supports their motion. So, as to their — my friend's consent-by-use argument, again, assuming that the 2018 terms are an accurate depiction of the terms that were in effect at the time the suit was filed, there is no evidence in the record that my client had notice. And so, again, even assuming that the law that imputes knowledge of allegations to a plaintiff in the complaint, that law — there is no law that extends that principle, that constructive notice principle, to all contents of websites that are hyperlinked in complaints. But even assuming it does extend to hyperlinks, that would — that at best proves constructive notice. And I think this is actually where the Berman line of cases are helpful. Even though Berman does not expressly — Berman and its progeny do not discuss 1589, what I read those cases as is a — an application and expansion of 1589 specific to this context, when you're talking about arbitration clauses set out in online terms of service, that essentially the Berman cases supply the analytical and evidentiary framework for deciding whether a party both has notice and has manifested assent. Your — your complaint repeatedly mentions the terms of service, yes? Correct. But they — they only mention terms of service insofar as to say that my clients reject those terms of service, that my clients haven't consented to those terms of service. So we even — again, before we get to 1589, we have to grapple with the — I think what the cases call hornbook law, that an express rejection of proposed terms terminates the offer that can't be unilaterally revived later. And here, the filing of the complaint can only be construed as an unequivocal express rejection of IXL's terms, both in content and in the fact that they filed the complaint rather than initiating arbitration. And so before we look at 1589 and whether they could have accepted a benefit and created a contract, we have to deal with the fact that the law is very clear. This is going back to the restatement common law codified in California law, that a rejection of the terms terminates the offer. So assuming that my client's unequivocal rejection of the terms didn't terminate the offer and that my clients could have unilaterally revived them sometime thereafter, IXL has failed to prove that my clients agreed to those terms under 1589. And as I've said, I do believe that the burden of proving voluntariness when a party seeks to prove the existence of a contract in the first instance, voluntariness is their burden. But beyond that, there is no evidence. IXL has failed to prove other elements that my clients accepted a benefit. Even if we reject your argument and find that that voluntariness is your burden, you would still take the position that you don't want any further discovery on that? That's correct. I would say that even if they had proven or if it wasn't their burden to prove voluntariness in the first instance, they've still failed to show that by failing to prevent their children from using IXL, their school accounts at school, that the parents have assented to, in the parlance of 1589, accepted a benefit of the transaction, that the idea that 1589, when it uses the word transaction, contemplates children going to school, I don't think that's what the legislature had in mind. But the whole basis of your complaint, or a large part of the basis of your complaint, is the use of these services by your clients and the class, right? Correct. Okay. And so I would, we don't dispute that our clients use IXL school accounts, but whether that constitutes a benefit that in using, whether the children using it or the parents preventing them from using their school accounts, constitutes specifically a voluntary acceptance of benefits of the transaction. Those words are very specific. It's not use of a product in a vacuum. It's acceptance of benefits in a transaction. Part of your argument to the district court was our kids have to go to school. Correct. And so how could our use of this be voluntary? That's correct, Your Honor. And that was basically your argument. That's right. And to the extent that IXL relies exclusively on the complaint. Going to school necessarily involves the use of IXL service? In this, on these facts, that's right, Your Honor. That in the context of compulsory education, that whether there was something my clients could have done to prevent their children from using their school accounts is, is really beside the point. The point is that if, certainly if IXL wanted to produce evidence of voluntariness, it was free to do so. For example, it could have contacted its customer and said, would you please provide an affidavit about your school's use of IXL? And if the district court is right that they had the burden, then that's a compelling argument. Correct. I believe one other point that I did want to make just on the, the COPPA argument. While there's much to say on the, on that argument, I do believe that the FTC has soundly refuted any, to the extent that its guidance could be interpreted, the FTC has refuted their interpretation. But I do want to highlight the fact that COPPA, unlike Section 1589, COPPA is not a contract formation statute. Nothing in COPPA contemplates contracts. It is a consent and tort, not in contract. And so in that sense, before we even get to whether it applies to schools or, or contemplates agency, there's nothing in COPPA that suggests that even as to parents, if a Internet provider meets all of the elements, that they have a contract with parents. Instead, what it does is sets out the elements of consent to otherwise tortious conduct and consent that is by the terms of COPPA always revocable. And with that, I will cede my time unless the Court has additional questions. Judge Gould? Thank you, counsel. Thank you. I just have a couple of points, Your Honor. Your Honor is right. The issue of voluntariness is the plaintiff's burden. And we've cited cases, both Mashpee, Saheli, Doe v. Steele, all make clear that the party who is trying to repudiate the existence of a contract for undue burden, duress, those all fall on the plaintiff. So if there's no more discovery to be had, and I — then, then the issue is pretty clear. If the plaintiffs don't want any more discovery and the burden falls to the plaintiffs, they've provided no discovery, it dissolves. And we have to follow California contract law principles on this one, because as Your Honors know, you can't insert any additional terms that impede the ability to go forward on arbitration. So it has nothing to do with anything other than what does California law say as to where the burden is. If the burden is properly on the plaintiffs, they have to come forth with evidence. The evidence in this case of the terms of service are what IXLs supply. They supply terms of service and said that the 2018 terms of service, part and partial, are the same ones that have existed since that period of time. This case doesn't go back before 2018. There's no allegations that they accessed it before 2018. So those are the terms. If the plaintiffs believe that those — and the issue is not what the terms are. There's no dispute at the district court level that those were the applicable terms for this Court's consideration. If that's an issue that they want to dispute that should have been taken up at the district court, it wasn't. And all they have to do is provide some evidence, anything saying we didn't agree to those terms of service, we didn't see those. The plaintiffs offered nothing. It's because of the posture of the case. That's why we're saying, Your Honor, send the case back for discovery. Let there be further fact development before Judge Lynn to determine whether or not what the facts actually are. And this notion that you can't remand and order more discovery is just not true. Court after court after court in this circuit has repeatedly remanded cases where there are questions of fact around arbitration and whether the ad agreement exists, remanded them to the district court for further findings. In fact, that's exactly what you said, Your Honor, that courts can do in Kanapky, where you said going back for discovery after the motion is denied is entirely appropriate because at that point you can ask for discovery and go to summary judgment, and if there's no determination, if that can't be resolved on summary judgment, you can have a hearing before the district court, a so-called mini-trial, to resolve those factual disputes and find out if an agreement actually exists. And then the questions for arbitrability can be decided. That's the path the court should go forward here, is the terms of the agreement are expressly in the complaint over and over again. They agreed to accept that benefit. There's no question of that. That is the basis of their complaint. The only question is voluntariness. And Your Honor, I submit if the plaintiffs don't want any more discovery on that, then reversal is the only option here. If the plaintiffs want more discovery or are willing to have more discovery, then the option here is send us back for discovery on the question of voluntariness. Ginsburg. All right. Thank you very much, counsel, both sides for your argument this morning. The matter is submitted and will issue a decision in due course. And that concludes this morning's argument calendar. We're in recess until tomorrow. All rise.
judges: GOULD, NGUYEN, BENNETT